**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Dana G. Gabel,<br><br>                Plaintiff,<br><br>v.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>                Defendant. | No. CIV 07-369-TUC-CKJ (JM)<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Dana G. Gabel ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) and 1383 (c) (3) of the Social Security Act, seeking judicial review of the final decision of the Commissioner of Social Security. This Social Security Appeal has been referred to the United States Magistrate Judge pursuant to Local Rule – Civil 72.2(a)(10) of the Rules of Practice of this Court. Based on the parties' cross motions of summary judgement and the record submitted to the Court, the Magistrate Judge recommends that the District Court, after its independent review, deny Plaintiff's Motion for Summary Judgment [Doc. No. 17] and grant Defendant's Cross-Motion for Summary Judgment [Doc. No. 21].

**I.  Procedural Background**

On May 23, 2005, Plaintiff filed his application for disability insurance benefits under Title II of the Social Security Act and for supplemental security income under Title XVI of the Social Security Act, alleging a disability onset date of July 30, 2003. (Tr. 92-105).[1] His application was denied initially (Tr. 44-46) and upon reconsideration. (Tr. 47-49). Plaintiff

---

[1] "Tr." refers to the official transcript of the administrative record.

then requested a hearing before an administrative law judge ("ALJ") (Tr. 53) which was held on November 13, 2006. (Tr. 302). In a decision dated March 26, 2007, the ALJ found that Plaintiff was not disabled. (Tr. 14-26). Plaintiff requested review of the ALJ's decision. (Tr. 53-56). It was denied by the Appeals Council on June 12, 2007. (Tr. 5-8). Accordingly, the ALJ's decision became the final decision of the Commissioner of Social Security. (*Id.*). Plaintiff filed a complaint in this Court on August1, 2007, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) and 1383 (c) (3) of the Social Security Act [Doc. No. 1].

**II.     Record on Appeal**

   **A.     Hearing**

Administrative Law Judge Lauren R. Mathon conducted a hearing on November 13, 2006. (Tr. 302). Plaintiff was represented by counsel and testified. Additionally, testimony was provided by a medical expert, Ferron R. Aikens, M.D., and a vocational expert, Stacy Shunbrun. (*Id.*)

      **1.     Plaintiff's Testimony**

At the time of the hearing, Plaintiff was 45 years old. He is six feet tall and weighs 210 pounds. He drove himself to the hearing. He finished school through the 11th grade and did not obtain a GED. (Tr. 330). He took one year of courses at a junior college, earning a certificate in automotive repair and drafting. (Tr. 331-32). He is also a certified General Motors consultant. (Tr. 332).

Plaintiff testified that at the time of the hearing he had been working 40 hours a week for the previous six months as a service adviser for Budget Car and Truck Sales, where he had limited contact with customers. (Tr. 313, 332).  His prior work experience was also in the automotive industry. From about October 2005 through May 2006, Plaintiff was working at Royal Buick, but he was fired because he had missed work due to his anxiety-related sweating and stomach problems. (Tr. 333-34). From July of 2003 until October of 2005, his only job was a two week attempt in November 2004 working as a parts counter person for an RV

dealer. (Tr. 316, 334). Before then, he had worked as a manager from March until July 2003 at Brake Masters. (Tr. 334-35). He lost that job due to memory problems and mistakes he made on the computer because he was nervous around customers and missed work days. (Tr. 335-36). Prior to Brake Master, he worked at Don Mackey for over two years, but lost that job due to anxiety-related illness and missed work. (Tr. 336). He described the automotive work he was doing as "high stress" because "you are constantly yelled at by customers," who are "not always happy." (Tr. 336).

Plaintiff testified that he was unable to work during the alleged period of disability because he was not on the proper medication. (Tr. 320). During his period of disability, he was sweating badly and his stomach was upset and cramped and he was unable to handle work. (Tr. 321). He was seeing Dr. Sanders, who prescribed Halcion, which he stated made him worse and did not help at all. (Tr. 321, 337). Beginning in July 2003, he had no insurance and was not taking medication. (Tr. 337). Then, in July 2005, he began seeing a new doctor, Dr. Mittal, who prescribed Monixanax and breathing exercises which helped him return to work. (Tr. 322). In October 2005, he was able to return to work at the less demanding job at Budget. (Tr. 319).

From July of 2003 through October of 2005, aside from his work attempts, Plaintiff spent his days doing things around the house with the help of others, mainly his sister and father. (Tr. 338-39, 341). Without medication, he needed help with cleaning the yard and cooking. (Tr. 339). Plaintiff's sister would help him get groceries and run errands for him because he "was scared to go outside." (Tr. 340). He supported himself through unemployment benefits and by borrowing from his father. (Tr. 341).

### 2. Medical Expert's Testimony

Dr. Aikens questioned Plaintiff about his medication and treatment. Plaintiff stated that he was on generic Xanax. (Tr. 307-08). At the time of the hearing, he indicated he was not positive about the dates, but that he had seen someone he thought was a nurse practitioner at Marana Health Center. (Tr. 308-09).

Dr. Aikens examined Plaintiff's psychiatric records and found that Plaintiff met some of the criteria for diagnoses of depression, anxiety and attention deficit. He found that Plaintiff suffered from decreased energy, anhedonia, sleep disturbance and difficulty concentrating and thinking (Tr. 310) and at least partially supported a finding that he was suffering from depression. (Tr. 309-10). He also found autonomic hyperactivity, motor tension and vigilance, which could be interpreted as a supporting a diagnosis of an anxiety related disorder. (Tr. 310). He also found support for a diagnosis of attention deficit hyperactivity disorder, which he categorized as an organic mental disorder. (Tr. 310).

Dr. Aikens proceeded to note, however, that he did not believe Plaintiff was entitled to benefits because he did not find evidence that Plaintiff was suffering any marked restrictions of daily living; social functioning; concentration, persistence, or pace; or decompensation. (Tr. 310-11). Addressing Plaintiff's activities of daily living, the doctor stated that it would have been helpful if Plaintiff's self-reporting was supported by termination notices, or employment warnings that would have indicated what was occurring at work. (Tr. 324-25). He also noted that Dr. Rau's evaluation noted only that Plaintiff was markedly limited only in relation to complex instructions, and that it was not clear whether the Plaintiff was capable of working in a "less stressful, less demanding position." (Tr. 325-26). Because Dr. Rau, "as of July 2005, . . . doesn't seem to feel that the cognitive deficits are so significant that it would mean that [Plaintiff] would be unemployable in all regards," Dr. Aikens could not say with medical certainty that the Plaintiff satisfied the criteria for a finding that he was disabled. (Tr. 326). Dr. Aikens then deferred to Dr. Rau's reports that indicated that Plaintiff could do less demanding, repetitive work. (*Id.*)

### 3.     **Vocational Expert's Testimony**

Vocational Expert Dr. Stacy Shunbrun identified Plaintiff's past relevant work as that of an auto service manager which was categorized as light and semiskilled. (Tr. 344). His work as an auto store manager was light and skilled. (*Id.*). She characterized the rest of Plaintiff's work as a service consultant and advisor and writer as light and skilled. (Tr. 345).

- 4 -

The ALJ then offered a hypothetical for the VE to evaluate. Specifically, the ALJ asked the VE to "assume that we have a hypothetical individual with [Plaintiff's] age, education, and vocational background," who is described with the following attributes:

> [u]nderstanding, and carrying out and remembering, not significantly limited. And that was to remembering locations and worklike procedures . . . . The next is, the ability to understand and remember very short and simple instructions, moderately limited but not precluded. The ability to understand and remember detailed instructions, markedly limited. Next category, sustained concentration and persistence. The ability to carry out very short and simple instructions would be not significantly limited. The ability to carry out detailed instructions, moderately limited, but not precluded. The ability to maintain attention and concentration for extended periods would be moderately limited, but not precluded. The ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances would be not significantly limited that would be mild to none. Okay. Next would be the ability to sustain an ordinary routine without special supervision. That is moderately, limited, but not precluded. Next, the ability to work in coordination with or proximity to others without being distracted by them, moderately limited, but not precluded. The ability to make simple work-related decisions is not significantly limited, meaning mile limitation only. The ability to complete a normal workday without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods would be marked. Next category, social interaction. The ability to interact appropriately with the general public is moderately limited. The ability to ask simple questions or request assistance is not significantly limited. Next, the ability to accept instructions and respond appropriately to criticism from supervisors is not significantly limited. Next, the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes is marked, marked limitation.

(Tr. 346-47).

Based on these limitations, the ALJ asked the VE if this person could maintain any type of work, and the VE responded that he could not. (Tr. 348). When asked to assume that the same individual had no exertional limits and was able to perform simple, repetitive tasks, with no other limitations, the VE opined that the person could work as a janitor or laundry room attendant. (Tr. 348). On cross examination, the VE stated that a person who missed work three or more days per month at unpredictable times would not be able to maintain

- 5 -

1  competitive employment. (Tr. 349).

   **B.     Medical Evidence**

   **1.     Plaintiff's Treating Physicians**

Plaintiff was seen by Vance Sanders, M.D., from about June of 2002 through February 2004. (Tr. 292 (medication record)). On his first visit, Dr. Sanders noted that Plaintiff was complaining of insomnia with underlying anxiety, and that, "[u]ntil recently, he was unwilling to recognize this was a problem." (Tr. 288). Plaintiff reported that he had problems with frequent absences at work due to "various somatic complaints." (*Id*.). Dr. Sanders' assessment included insomnia, for which he prescribed Halcion, and chronic anxiety, for which he gave the Plaintiff Zoloft. (*Id*.). On June 10, 2003, Plaintiff again saw Dr. Sanders and was given Vicodin for pain resulting from a back injury caused by pushing his car. (Tr. 287). The doctor again noted insomnia and gave Plaintiff samples of Zoloft. (Tr. 287).

Dr. Sanders again saw the Plaintiff on December 19, 2003. (Tr. 293). The doctor recorded a know history of insomnia, chronic anxiety, hypertension and non-compliance. (*Id*.). The doctor also reported that the Plaintiff came in "after having weasled his way form 10 pills per month up to 30 pills a month of his Halcion." (*Id*.). The doctor explained to Plaintiff, "that while other doctors may be willing to give him Halcion on a daily basis that I would not be willing to do so." (*Id*.) Plaintiff was given a prescription for Halcion with no refills and the doctor noted that "[f]urther problems with compliance will leave us no choice but to dismiss the patient." (*Id*.).

On June 28, 2005, Plaintiff presented to Manoj Mittal, M.D., at the Marana Health Center "to establish medical care." (Tr. 207). Plaintiff complained of "significant anxiety" and reported that he was unable to sleep well. (*Id*.). Dr. Mittal found that attention deficit disorder was "quite highly likely." (Tr. 209). That same day, Dr. Mittal referred Plaintiff to Tim Moore, M.A., L.I.S.A.C., also at the Marana Health Center. (Tr. 208). Counselor Moore found Plaintiff to be "mildly anxious," and recommended that he be considered for a brief trial of medications. (*Id*.). He also considered referral to a behavioral health program for a more

- 6 -

thorough assessment and ongoing treatment; however, Plaintiff wanted to wait and try primary care and medications before trying the behavioral health program. (*Id*.).

On July 26, 2005, Dr. Mittal again saw Plaintiff for follow-up. (Tr. 204). Plaintiff felt very anxious and jittery and was unable to focus. (*Id*.). Dr. Mittal assessed Plaintiff has having "anxiety disorder," and suggested Plaintiff use Xanax as needed. (*Id*.) Dr. Mittal completed a disability assessment indicating that Plaintiff could not perform any substantial gainful employment due to his chronic anxiety. (Tr. 217). Plaintiff also saw Counselor Moore, who found Plaintiff "anxious bu may be a little calmer." (Tr. 205). Plaintiff reported that he had basically no improvement and that he continued to have trouble focusing and with his memory and that he was unable to find work due to his symptoms. (*Id*.).

**2.     The Disability Determination Services' Consulting Physicians**

On July 21, 2005, Plaintiff was seen by James Rau, Ph.D., on referral from Disability Determination Service for evaluation of his neurologic status. (Tr. 223). Plaintiff told Dr. Rau that he was unable to work as a service consultant due to problems with his memory and panic attacks. (Tr. 224). Based on testing, Dr. Rau found Plaintiff was "functioning intellectually in the broad low average range." (Tr. 225). Dr. Rau found "clinical level anxiety" that the doctor did not find extreme. (Tr. 226). In relation to Plaintiff's psychosocial cognitive capacities, Dr. Rau stated:

> I think the problem with Mr. Gabel would be consistency in terms of managing the cognitive, social and emotional mandates of any performance based activity. I think he would have difficulty managing tasks where there is significant social press [sic] and/or if he has to register auditory and verbal information quickly and accurately.

(*Id*.)

Paul Tangeman, Ph.D., completed a Psychiatric Review Technique and a Residual Functional Capacity ("RFC") Assessment on September 7, 2005. (Tr. 230-247). Dr. Tangeman noted that Plaintiff's disorders were ADHD and anxiety. He found that Plaintiff had mild restriction of activities of daily living, and moderate limitations in maintaining social

- 7 -

functioning and maintaining concentration, persistence and pace. (Tr. 240). In the RFC assessment, Dr. Tangeman concluded that Plaintiff was moderately limited in the ability to understand and remember detailed instructions, the ability to carry out instructions, the ability to maintain attention and concentration for extended periods of time, the ability to complete a normal workday and workweek, to get along with co-workers, and the ability to respond appropriately to changes in the work setting. (Tr. 244-45). In the remaining categories, Dr. Tangeman reported that either there was no evidence of limitation or that Plaintiff was not significantly limited. (*Id*.). In his summary, Dr. Tangeman stated that Plaintiff's ADHD was well-controlled with medication and that he was independent in all activities of daily living. (Tr. 247). He noted further that Plaintiff's anxiety reduced his concentration, persistence and pace for complex tasks, and concluded that Plaintiff "shows residual ability to sustain simple work tasks in a low stress environment." (*Id*.).

Hubert Estes, M.D., completed a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment on January 10, 2006. (Tr. 249-266). Dr. Estes noted the ADHD and anxiety diagnoses and found Plaintiff moderately limited in the ability to maintain concentration, persistence and pace. (Tr. 259). Dr. Estes' summary conclusions in the Mental Residual Functional Capacity Assessment were similar to Dr. Tangeman's. (Tr. 263-264).

**D.    ALJ's Findings and Decision**

On March 26, 2007, the ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.
>
> 2. The claimant has not engaged in substantial gainful activity from July 30, 2003 through October 17, 2005, the closed period. (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).
>
> 3. The claimant has the following severe impairments: anxiety disorder; depression; and attention deficit hyperactivity disorder, by history (20 CFR § 404.1521(c) and 416.9209(c))
> ...
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed

- 8 -

>   impairments in 20 CFR, Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>   ...
>   5. After careful consideration of the entire record, the undersigned finds that the claimant has no exertional limitations. Due the his psychological impairments, he is able to understand, remember, and carry out simple, repetitive but not detailed or complex work instructions. In addition, he is able to respond appropriately to supervision, coworkers, and ususal work situations; and to deal with changes in a routine work setting.
>   ...
>   6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>   ...
>   7. The claimant was born on October 16, 1961 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
>   8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
>   9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
>   10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).
>   ...
>   11. The claimant has not been under a "disability" as defined in the Social Security Act from July 30, 2003 through October 17, 2005 (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 19-25). Based on these findings, the ALJ found Plaintiff not disabled under the Social Security Act. (Tr. 26).

**III.    Standard of Review**

A court reviews the Commissioner's final decision to determine whether the factual findings are supported by substantial evidence and whether the proper legal standards were applied in weighing the evidence and making the decision. *Flake v. Gardner*, 399 F.2d 532,

- 9 -

540 (9th Cir. 1968). "Substantial evidence" means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Where evidence is susceptible to more than one rational interpretation, a court must uphold the ALJ's conclusion. *Id.*

**IV.    Discussion**

       **A.    Evaluation Process**

The Social Security Regulations establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. § 404.1520. At **step one** of the process, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, a finding of non-disability is made and the claim is denied. 20 C.F.R. § 404.1520(b).

When the claimant is not currently engaged in substantial gainful activity, the ALJ, in **step two**, must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities; if not, a finding of non-disability is made and the claim is denied. 20 C.F.R. § 404.1520(c). A severe impairment or combination of impairments exists when there is more than a minimal effect on an individual's ability to do basic work activities. 20 C.F.R. § 404.1521(a); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, remembering and carrying out simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

At the **third step**, the ALJ must compare the claimant's impairment to those in the Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1; if the impairment meets or equals an impairment in the Listing, disability is conclusively presumed and benefits awarded. 20 C.F.R. § 404.1520(d).

When the claimant's impairment does not meet or equal an impairment in the Listing, in the **fourth step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work; if so, a finding of non-disability is made and the claim is denied. 20 C.F.R. § 404.1520(e).

When the claimant shows an inability to perform past relevant work, a prima facie case of disability is established and, in **step five**, "the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." 20 C.F.R. § 404.1520(f).

### B.     Analysis

Here, the ALJ resolved Plaintiff's claim at step five and found that Plaintiff "was capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 25). Specifically, the ALJ found that Plaintiff would be able to perform the requirements of a janitor and a laundry room attendant. (*Id.*).

Plaintiff raises three objections to the ALJ's findings and disability determination: 1) that the ALJ erred by failing to provide specific legitimate reasons for rejecting the Plaintiff's testimony; 2) that the ALJ erred by failing to provide specific legitimate reasons for rejecting the opinions of treating and examining physicians; and 3) that the ALJ erred by failing to include all of the Plaintiff's impairments in the hypothetical to the vocational expert. Each of these arguments is evaluated below.

#### 1.     Plaintiff's Testimony

Determinations of a claimant's credibility are to be made by the Commissioner through the ALJ. *Talifson v. Secretary of HHS*, 554 F.Supp. 575, 580 (D.Mont. 1982). The ALJ is not required to accept as true every allegation of disabling pain or other non-exertional impairment. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms described by a plaintiff, the ALJ must make a finding as to the credibility of the plaintiff's

- 11 -

1  statements about the symptoms and their effect on his functional capacity. *Robbins v. Social Security Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Unless affirmative evidence of malingering is found, the ALJ may reject the plaintiff's testimony regarding the severity of her symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. *Id.* A reviewing court must give "great deference to credibility determinations made by administrative law judges." *Silver v. United States Postal Service*, 951 F.2d 1033, 1042 (9th Cir.1991). However, these findings must be sufficiently specific to allow a reviewing court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-56 (9th Cir. 1991) (citation omitted). The ALJ is required to specifically identify the testimony found not to be credible and explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.2d 1195, 1208 (9th Cir. 2001).

Plaintiff first contends that the ALJ improperly relied on Plaintiff's activities of daily living in finding the Plaintiff was capable of sustained work activity. In the decision, the ALJ stated:

> The claimant acknowledges, in his written statements and oral testimony, that he lives alone and is able to care for his dog, prepare simple meals, and do housekeeping chores such as laundry, cleaning, vacuuming, and mopping although he wrote notes to himself as reminders. In addition, he drives, goes shopping on a weekly basis, handles his own financial affairs, and visits regularly with his family. His hobbies were watching TV and learning guitar. Although he follows written instructions fairly well, he has difficulty with verbal directions, and has chronic anxiety, panic attacks, and a fear of public places. [] His testimony was that he continued to look for work by telephone and not in person.

(Tr. 22-23). From these findings, to which Plaintiff has offered no specific objection, the ALJ "inferred that [Plaintiff] maintained a somewhat normal level of daily activity and interaction," and concluded that Plaintiff's testimony "with regard to the severity and functional consequences of his symptoms is not fully credible." (Tr. 23).

As a threshold matter, and contrary to Plaintiff's position, it was not improper for the

- 12 -

ALJ to consider the Plaintiff's daily activities in evaluating his credibility. *Social Security Ruling 88-13*; *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) ("For instance, if the claimant engages in numerous daily activities involving skills that could be transferred to the workplace, an adjudicator may discredit the claimant's allegations upon making specific findings relating to the claimant's daily activities.") The Plaintiff also overlooks that the ALJ recognized he had limitations and, by finding him "not fully credible," did not rely exclusively on this factor in reaching the conclusion that Plaintiff was not disabled. Rather, in finding the Plaintiff not disabled, Plaintiff's daily activities were used as a factor to be considered along with the other evidence cited in the decision. As discussed below, the ALJ considered and explained why other evidence, in addition to that related to Plaintiff's daily activities, supported her disability determination.

### 2. Opinions of Treating and Examining Physicians

Plaintiff asserts that the ALJ's reliance on the opinions of state agency physicians and rejection of Dr. Rau and Dr. Mittal's assessments was misplaced.

If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The Ninth Circuit's standards for evaluating opinions from treating physicians are as follows:

> By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians. *See* 20 C.F.R. § 404.1527. If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Id.* § 404.1527(d)(2). If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with the other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. *Id.* § 404.1527(d)(2)(i)-(ii). Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the

- 13 -

> opinions of examining non-treating physicians are afforded less weight than those of treating physicians. *Id.* § 404.1527(d)(1)-(2). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs" and their evidentiary requirements' and the degree of his or her familiarity with other information in the record. *Id.* § 404.1527(d)(3)-(6).

*Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

Dr. Mittal completed a form indicating Plaintiff was disabled due to "chronic anxiety." (Tr. 217) In evaluating this opinion, the ALJ accurately noted that "[t]he medical evidence documents very sporadic contact with any physician from July 30, 2003 through October 17, 2005." (Tr. 21). The ALJ also concluded that the Plaintiff's "non-compliance and lack of ongoing care does not support the alleged intensity and duration of his subjective psychological complaints." (Tr. 22). In support of that conclusion, the ALJ cites Plaintiff's documented failures to attend scheduled appointments and to take medications as prescribed. (*Id.*). As the "nature and extent of the treatment relationship" is a proper consideration, the fact that the Plaintiff only twice saw Dr. Mittal is significant in determining the weight given his opinion. The notes from Plaintiff's initial appointment with Dr. Mittal, on June 28, 2005, reflect that Plaintiff's subjective complaints included "significant anxiety." (Tr. 207). However, in the assessment and plan notes, the doctor indicates that the Plaintiff has "some anxiety." (Tr. 209). The next, and last, time Plaintiff was seen by Dr. Mittal was on July 26, 2005. The doctor's assessment for that visit does include "anxiety disorder." (Tr. 204). On that same day, Plaintiff again saw Counselor Moore at the Marana clinic, who described Plaintiffs as "anxious but may be a little calmer." (Tr. 205). Considering that Plaintiff was described in June as having "some anxiety" and then in July was said to be "a little calmer," it was quite reasonable and appropriate for the ALJ to characterize Plaintiff's anxiety as "mild" or "slight." (Tr. 22).

- 14 -

With regard to Dr. Rau's report, the Court finds ample evidentiary support for the ALJ's interpretation. The ALJ found Dr. Rau's records to be internally inconsistent:

> Although Dr. Rau noted very serious limitations which would preclude all work activity, according to the testimony of the vocational expert, in the narrative report the claimant is described as only "slightly anxious in a persistent way buy not at all extreme."

(Tr. 24 (decision); Tr. 223 (Dr. Rau's report)). It is difficult to square this statement, which describes the Plaintiff's mental status as "slightly anxious," with the functional limitations Dr. Rau indicates are present. (Tr. 218-222). Nevertheless, the ALJ did not outright reject Dr. Rau's opinions of Plaintiff's functional limitations. Rather, he returned to the fact that there was little evidence in the record that would support the alleged severity and duration of Plaintiff's impairments. As the ALJ accurately summarized:

> The medical evidence documents very sporadic care for problems of anxiety and insomnia, treated only with medication. During the closed period requested by the claimant, he received no psychological counseling, did not obtain ongoing care for [sic] his primary care physician, and did not take psychotropic medications on a regular basis.

(Tr. 24). The ALJ provided the requisite detailed summary of and a reasoned interpretation of the facts and clinical evidence that fully supports her denial of Plaintiff's claim. Accordingly, after completely reviewing the record, the Court finds that the ALJ provided clear and convincing reasons for rejecting Dr. Mittal's opinion regarding Plaintiff's disability.

### 3.    **Hypothetical to the Vocational Expert**

The ALJ found that Plaintiff was unable to perform his past relevant work as an automobile service manager, store manager, or service advisor. (Tr. 24). The ALJ also concluded that the Plaintiff's ability to perform work at all exertional levels was compromised by his non-exertional limitations. (Tr. 25). Based on these facts, the ALJ asked the vocational expert ("VE") whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity to perform simple, repetitive tasks. (Tr. 25 (Decision); Tr. 343-349 (VE Testimony)). The VE indicated that such a person

1  could work as a janitor or laundry room attendant. (Tr. 25). Accordingly, the ALJ found
2  Plaintiff not disabled. (*Id.*)

3  Plaintiff argues that the ALJ failed to include all of Plaintiff's impairments in the
4  hypothetical presented. Specifically, he contends that the ALJ was obligated to review the
5  Plaintiff's ability to understand, carry out, and remember instructions; use judgment in making
6  work-related decisions; respond appropriately to supervision, co-workers and work situations;
7  and deal with changes in a routine work setting. *See* SSR 96-8p; 20 C.F.R. § 404.1521(b)(3)-
8  (6). Plaintiff further asserts that the ALJ then was required to evaluate these four broad
9  categories by assessing Plaintiff's abilities under the 20 work-related functions described in
10 the Commission's Program Operation Manual System, POMS DI 25020.010.

11 The hypothetical offered by an ALJ for evaluation by a vocational expert must be
12 based on medical assumptions supported by substantial evidence in the record. *Roberts v.*
13 *Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). Here, the ALJ relied on the state agency physicians
14 and the lack of evidence in the record in finding that Plaintiff could understand, remember and
15 carry out simple, repetitive instructions and that he was ale to "respond appropriately to
16 supervision, coworkers, and usual work situations; and to deal with changes in a routine work
17 setting." (Tr. 20). As discussed in the two previous sections, the ALJ's decision withstands
18 the claims of error offered by the Plaintiff. As such, the ALJ was not obligated to include in
19 the hypothetical the limitations which were found to be unsubstantiated based on her review
20 of the record. The hypothetical should be "accurate, detailed, and supported by the medical
21 record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The hypothetical should not,
22 of course, include impairments that are properly found not to be supported by substantial
23 evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989). Thus,
24 contrary to Plaintiff's contentions, the ALJ was not required to offer a function-by-function
25 review of alleged impairments that were properly rejected.

26

27 **V.    RECOMMENDATION FOR DISPOSITION BY THE DISTRICT JUDGE**

28

- 16 -

Based on the foregoing and pursuant to 28 U.S.C. § 636(b) and Local Rule 1.17(d)(2), Rules of Practice of the United States District Court, District of Arizona, the Magistrate Judge recommends that the District Court, after an independent review of the record, **DENY** Plaintiff's Motion for Summary Judgment [Doc. No. 17] and **GRANT** Defendant's Cross-Motion for Summary Judgment [Doc. No. 21].

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have ten (10) days within which to file a response to the objections. If any objections are filed, this action should be designated case number: **CV 07-369-TUC-CKJ**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

DATED this 9th day of February, 2009.

Jacqueline Marshall
United States Magistrate Judge